# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CECIL T. KAHILL,

      Petitioner,

      v.                              Case No.  17-CV-116

GARY BOUGHTON,

      Respondent.

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS

Cecil T. Kahill, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Kahill alleges that his conviction for first-degree reckless injury by use of a dangerous weapon as an act of domestic abuse is unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Kahill was charged with attempted first-degree intentional homicide, first-degree reckless injury, and endangering safety, all by use of a dangerous weapon and as acts of domestic abuse, and one count of misdemeanor theft. (*State v. Kahill*, 2015AP963 (Wis. Ct. App. July 21, 2016), Answer, Docket # 13-1 at 3–4.) Pursuant to a plea agreement, Kahill pled guilty to one count of first-degree reckless injury by use of a dangerous weapon as an act of domestic abuse. (*Id.* at 4.)

The facts as alleged by the State are as follows. Kahill had a history of domestic violence against his girlfriend R.R. (*Id.* at 3.) In 2012, R.R. began an online relationship

with "James" after ending her relationship with Kahill, and she agreed to meet "James."

(*Id.*) The Court of Appeals summarized the events of January 2, 2013 as follows:

> When she entered the lobby of her apartment complex, she encountered Kahill, who had been pretending to be "James." They talked, and Kahill indicated he was afraid R.R. would disclose his ongoing unauthorized use of her mother's credit card. When R.R. attempted to walk away, Kahill seized her from behind, threatened to kill her and her family, and stabbed her repeatedly, breaking two knives in the process. Kahill next produced a gun and dragged R.R. at gunpoint to the basement of the apartment complex where he hid the broken knives. Kahill then moved R.R. outside. When police arrived, Kahill told them he did not know R.R. and that a "white guy" had stabbed her, but, after she was in the ambulance, she said Kahill was the attacker. During a search of the scene, police found two knife handles and a blade in the apartment complex basement and a loaded 40-caliber Glock handgun in the bushes.

(*Id.*)

Kahill pled guilty to one count of first-degree reckless injury by use of a dangerous weapon as an act of domestic abuse. The circuit court sentenced Kahill to thirty years of imprisonment, consisting of twenty years of initial confinement and ten years of extended supervision. (*Id.* at 1–2.)

After sentencing, Kahill moved to withdraw his plea, asserting that his trial counsel was ineffective. (*Id.* at 2.) Specifically, Kahill alleged that his trial counsel failed to explain to him that he had a defense to the charge of first-degree reckless injury. (*Id.* at 4.) According to Kahill, his trial counsel failed to explain that certain after-the-fact actions he took, including allowing R.R. to call 911, taking the phone himself to tell the dispatcher R.R. was dying, and staying with her at the scene, constituted a defense to the charge of first-degree reckless injury because the actions arguably showed he lacked one element of the crime: utter disregard for human life. (*Id.* at 4–5.)

At a *Machner* hearing, Kahill's trial counsel testified that he discussed Kahill's after-the-fact actions with him, but he was not certain he discussed it with regard to the charge of first-degree reckless injury specifically. (Hearing Tr. at 7–8, Docket # 22-1 at 23–24.) At the time, he felt that Kahill's post-injury conduct had to be weighed against the countervailing evidence, including a trail of blood leading to the apartment building laundry room where the knives were concealed. (Hearing Tr. at 18–24, Docket # 22-1 at 34–40.) He stated:

> I thought I could make the argument [about post-injury conduct indicating lack of utter disregard for human life] and there was a chance of being successful at trial. The countervailing evidence was there were multiple stab wounds to the neck, and the gun brought to the scene, the concealing of the knives in the laundry room. Those were things that I thought were working against us.

(Hearing Tr. at 21, Docket # 22-1 at 37.) He stated that the multiple stab wounds to the neck might "inflame the emotions of the jury and they may not care about all the things he did for her afterward. That's the risk." (Hearing Tr. at 23, Docket # 22-1 at 39.) He thought it was unlikely that Kahill would be successful at trial. (Hearing Tr. at 24, Docket # 22-1 at 40.)

Trial counsel testified that he had negotiated a more favorable plea deal with the prosecutor than the one she initially offered, ultimately reducing Kahill's potential sentence by at least twenty-five years of initial confinement and ten years of extended supervision. (Hearing Tr. at 25, Docket # 22-1 at 41.) He testified that Kahill had made the decision to take the plea deal, and he believed Kahill had done so because it was important to him to reduce his potential sentence. (Hearing Tr. at 25–26, Docket # 22-1 at 41–42.) He testified that he met with Kahill multiple times before the plea proceedings, generally for over an hour, and that while he didn't remember how long he spent going over the plea paperwork

with Kahill, he generally takes between fifteen and thirty minutes to do so with a defendant. (Hearing Tr. at 26–27, Docket # 22-1 at 42–43.) He also testified that he reviewed the elements of first-degree reckless injury with Kahill in the context of doing the plea questionnaire. (Hearing Tr., Docket # 22-1 at 23–25.)

Kahill testified that counsel never informed him that the after-the-fact actions would present an arguable defense to the charge of first-degree reckless injury, or that the jury would take them into consideration when assessing whether Kahill's actions showed utter disregard for human life. (Hearing Tr. at 34–35, Docket # 22-1 at 50–51.) Kahill also testified that when he went through the plea questionnaire he did not see the jury instructions, and his attorney did not read them to him. (Hearing Tr. at 36–37, Docket # 22-1 at 52–53.) He testified that when he had affirmed to the judge that he understood the plea questionnaire, he had not known what jury instructions were or that they were part of the plea questionnaire. (Hearing Tr. at 37–38, Docket # 22-1 at 53–54.) Kahill testified that at the time he entered his plea, he did not understand that his after-the-fact actions were relevant to whether he was guilty of first-degree reckless injury. (Hearing Tr. at 38, Docket # 22-1 at 54.) He testified that if he had understood that, he would have tried to negotiate a different plea or gone to trial. (Hearing Tr. at 39, Docket # 22-1 at 55.)

The circuit court found credible trial counsel's testimony that he had discussed the elements of the offense and the relevance of Kahill's actions after the injury with Kahill. (Hearing Tr. at 65–76, Docket # 22-1 at 81–92.) The judge noted that after-the-fact actions were not a "defense," but rather, part of the totality of factors the jury would consider when determining whether Kahill acted with utter disregard for human life. (*Id.*) He found Kahill's testimony that he would not have entered the guilty plea but for the alleged error to

4

be not credible. (*Id.*) Thus, the circuit court denied the plea withdrawal request, and the Wisconsin Court of Appeals affirmed. (Docket # 13-1.) The Wisconsin Supreme Court denied Kahill's petition for review on November 14, 2016. (Docket # 1-1 at 16.) Kahill timely filed a petition for writ of habeas corpus in this court on January 25, 2017. (Docket # 1.)

## STANDARD OF REVIEW

Kahill's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever

the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Kahill argues that he is entitled to habeas relief because his plea was not knowingly and voluntarily made due to ineffective assistance of counsel. Specifically, Kahill argues that trial counsel failed to notify him of one of the elements of the crime of first-degree reckless injury, namely that the act demonstrate utter disregard for human life, and that had he known this, he would have pled differently because his actions after the fact—allowing R.R.

to call 911, taking the phone himself to tell the dispatcher R.R. was dying, and staying with her at the scene—showed regard for human life.[1] (Pet. Br., Docket # 21.)

To be entitled to federal habeas relief, Kahill must show that the court of appeals' decision rejecting his claim that his plea was constitutionally defective was either contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented.

### 1. *Voluntariness of Plea*

A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). "Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." *Id.* The Supreme Court has indicated that adequate notice of the offense to which a defendant pleads can be satisfied either by "an explanation of the charge by the trial judge or at least a representation by defense counsel that the nature of the offense has been explained to the accused." *Id.* at 647.

In assessing the voluntariness of Kahill's plea, the court of appeals cited Wis. Stat. § 971.08 and *State v. Bangert*, 131 Wis.2d 246, 266–72, 389 N.W.2d 12 (1986) (holding that trial court had duty to establish at plea hearing that accused understood nature of crime with which he was charged and range of punishments which it carried). (Docket # 13-1 at 8.) Wis. Stat. § 971.08(a) requires that before a court accepts a guilty plea, it must "[a]ddress the

---

[1] In his habeas petition, Kahill also lists as a ground for relief that his trial counsel had his license to practice law suspended during part of the duration of his representation of Kahill. However, Kahill does not mention this ground in any of his briefs, so I will deem it abandoned.

defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted," mirroring the standard articulated by the Supreme Court. Thus, the state identified the appropriate standard. The question remaining is whether it applied that standard unreasonably.

In addressing Kahill's challenge to the voluntariness of his plea, the court of appeals referred to the plea proceedings to support its conclusion that Kahill's plea was knowingly and voluntarily made. (Docket # 13-1 at 6–8.) The court noted that after the State described the plea bargain, Kahill agreed that the State correctly described the terms of the agreement and said that his plea did not result from any threats or promises. (*Id.* at 6.) Kahill confirmed that he had reviewed the charging documents with his attorney. (*Id.*) The circuit court explained to Kahill the maximum penalties he faced and told him that the court could impose those penalties regardless of the terms of the plea bargain or any sentencing recommendations, and Kahill said he understood. (*Id.* at 6–7.) Kahill signed a guilty plea questionnaire and waiver of rights form and confirmed that he had reviewed it with his trial counsel and that he understood its contents. (*Id.* at 7.) The form indicated that Kahill was twenty-three years old, had a high school diploma, and had two years of post-secondary education. (*Id.*) The circuit court explained to Kahill that he would be giving up the constitutional rights listed on the form, and reviewed those rights with him. Kahill said he understood his rights and had no questions about them. (*Id.*) Kahill told the court he had reviewed and understood the addendum to the plea questionnaire, signed by both Kahill and his attorney. (*Id.*) The form acknowledged that Kahill had read the complaint and that, by pleading guilty, he would give up his rights to raise defenses, to challenge the validity of his arrest, and to seek suppression of his statements and other evidence. (*Id.*) The plea

questionnaire and addendum also included copies of the jury instructions describing the elements of first-degree reckless injury while armed, which Kahill told the circuit court he had discussed with his trial counsel and understood. (*Id.*) The circuit court conducted an inquiry to ensure that Kahill had actually committed first-degree reckless injury while armed as an act of domestic abuse. (*Id.*) Counsel stipulated to the facts in the complaint, and Kahill admitted that they were true. (*Id.* at 8.) Based on these facts, the court of appeals' determination that Kahill knowingly and voluntarily entered his plea was not an unreasonable application of the relevant Supreme Court standard.

Furthermore, after the *Machner* hearing the trial court found that Kahill had not lacked information, and that he fully understood the jury instructions and the elements of the offense. (Hearing Tr. at 71, Docket # 22-1 at 87.) As the court of appeals noted, the trial court is "the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." (Docket # 13-1 at 5–6.) The court of appeals may not "reweigh the testimony of the witnesses to reach a conclusion regarding credibility contrary to that reached by the circuit court." (*Id.* at 6.) Under AEDPA, this court must also defer to the state court's findings of fact unless they are unreasonable.

In light of the plea colloquy and the facts found by the trial court, it was not unreasonable for the court of appeals to conclude that Kahill's plea was knowingly and voluntarily made. Thus, Kahill is not entitled to habeas relief on this ground.

### 2. *Ineffective Assistance of Counsel*

The clearly established Supreme Court precedent for ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Kahill must show both "that counsel's performance was deficient"

and "that the deficient performance prejudiced the defense." *Id.* at 687. "Once a plea of guilty has been entered, non-jurisdictional challenges to the constitutionality of the conviction are waived and only the knowing and voluntary nature of the plea may be attacked." *United States v. Brown*, 870 F.2d 1354, 1358 (7th Cir. 1989). Thus, a guilty plea generally closes the door to claims of constitutional error. There is an exception, however, for instances where one's plea is rendered involuntary due to the ineffective assistance of counsel. *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014). A habeas petitioner "cannot just assert that a constitutional violation preceded his decision to plead guilty or that his trial counsel was ineffective for failing to raise the constitutional claim"; rather, he "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013).

In *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985), the Supreme Court stated that the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

The court of appeals correctly cited the *Strickland* standard for ineffective assistance of counsel. (Docket # 13-1 at 4.) Having identified the appropriate standard, the court of appeals then determined that there was no deficiency in trial counsel's performance. The trial court found that counsel had discussed with Kahill the totality of the circumstances around the stabbing, including Kahill's actions after the fact, and that Kahill had understood that a jury would consider the totality of the circumstances when assessing guilt, including

Kahill's actions after the fact. (Docket # 13-1 at 5.) Therefore, the court of appeals concluded that counsel's performance was not deficient. In light of the evidence presented, and with proper deference to the trial court as the finder of fact, this was not contrary to, or an unreasonable application of, *Strickland.*

The court of appeals cited to the Wisconsin case of *State v. Bentley* for the proposition that in the context of a guilty plea, the defendant must demonstrate prejudice by showing "'a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996) (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)). This standard mirrors the *Hill* standard for the prejudice prong. The court of appeals noted that the circuit judge had found Kahill's testimony that he would not have entered his guilty plea but for the error to be not credible. (Docket # 13-1 at 5.) The circuit court concluded that Kahill had made a conscious, calculated decision based on all the facts and that a more explicit statement about the jury's duty to consider the Kahill's actions after the fact would not have caused [Kahill] not to enter this plea on that date. (*Id.*) Deferring to these findings of fact, the court of appeals concluded that there was no prejudice to Kahill from the alleged error by counsel. (*Id.*) This was not unreasonable in light of the facts before it.

Because the court of appeals' decision was not contrary to, or an unreasonable application of, *Strickland* and *Hill*, Kahill is not entitled to habeas review based on the ineffective assistance of counsel.

## CONCLUSION

Kahill has not shown that the court of appeals' conclusion contravenes federal law or unreasonably determined the facts in light of the evidence. The court of appeals' finding that

trial counsel performed adequately and Kahill's guilty plea was knowingly and voluntarily made was not unreasonable. *See Hall*, 106 F.3d at 748–49 ("The statutory 'unreasonableness' standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes."). For these reasons, Kahill is not entitled to habeas relief.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Kahill is not entitled to habeas relief. Thus, I will deny Kahill a certificate of appealability. Of course, Kahill retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Kahill's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of January, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge